ORIGINAL

# United States District Court

NORTHERN DISTRICT OF WEST VIRGINIA

FILED
ELKINS, WV

OCT 9 1996

DAVID L. CORE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES OF AMERICA
V.

FLOYD RAYMOND LOOKER, a/k/a Ray -01
JACK ARLAND PHILLIPS -02
EDWARD F. MOORE a/k/a Fred -03

## CRIMINAL COMPLAINT

CASE NUMBER: 1:96m27

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **From March of 1996 to the present** in _____ county, in the **elsewhere** **Northern** District of **West Virginia and** defendant(s) did, (Track Statutory Language of Offense)

combine, conspire, and agree to commit an offense against the United States; that is, the defendants conspired to engage in the business of manufacturing and dealing in explosive materials in violation of Title 18, United States Code, Section 842(a)(1), all of which is

in violation of Title **18** United States Code, Section(s) **371**.

I further state that I am a(n) **FBI Special Agent** and that this complaint is based on the following facts:

(SEE ATTACHED AFFIDAVIT)

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Signature of Complainant
J. C. Raffety
Special Agent, FBI

Sworn to before me and subscribed in my presence,

**October 9, 1996** at **Elkins, WV**
Date                          City and State

DAVID L. CORE
U. S. MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer



FILED
ELKINS, WV
OCT -9 1996
DAVID L. CORE
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
                Plaintiff

v.                            MAGISTRATE CASE NO. 1:96m27

FLOYD RAYMOND LOOKER, a/k/a Ray,
JACK ARLAND PHILLIPS, and
EDWARD F. MOORE, a/k/a Fred
                Defendants.

## AFFIDAVIT OF SPECIAL AGENT IN SUPPORT OF CRIMINAL COMPLAINT

The Affiant, J. C. Raffety, being duly sworn, hereby deposes and states the following:

The Affiant is a Special Agent of the Federal Bureau of Investigation and has been so employed for twenty-six years. He is currently assigned to the Clarksburg, West Virginia, Resident Agency, Pittsburgh Division, Federal Bureau of Investigation.

The following are facts developed relative to a Conspiracy to Engage in the Business of Manufacturing and Dealing in Explosive Materials investigation which has been conducted by the Affiant, other Federal Bureau of Investigation agents, and by agents of the Bureau of Alcohol, Tobacco, and Firearms, during and in the course of their official duties.

Since on or about August 31, 1995, the Affiant and other Special Agents of the Federal Bureau of Investigation have been conducting an investigation into attempts by Floyd Raymond Looker, a/k/a Ray (hereinafter referred to as Looker), to obtain explosives for purposes related to Looker's position as commanding general of the West Virginia Mountaineer Militia. During the course of this investigation, evidence of illegal conduct by Jack Arland Phillips (hereinafter referred to as Phillips) and Edward F. Moore, a/k/a Fred ( hereinafter referred to as Moore) has been obtained.

This investigation has been primarily covert to date. The investigating agents have been assisted by two individuals working in undercover capacities under the supervision of the Federal Bureau of Investigation and by a confidential source (hereinafter referred to as Confidential Source) of the Bureau of

Alcohol, Tobacco, and Firearms. The first of the two individuals under the supervision of the Federal Bureau of Investigation is not a regular employee of the Federal Bureau of Investigation and has purported to be a trusted associate of Looker and other persons. This individual is identified in this affidavit as the Cooperative Witness. The information contained in this affidavit which is indicated as having originated with the Cooperative Witness has been told to the Affiant by the Cooperative Witness. The Cooperative Witness has consensually taped recorded numerous conversations in which he has participated and he has provided to the Affiant objects and documents which have come into his possession. On occasions, the movements of the Cooperative Witness and persons under investigation have been surveilled by Special Agents of the Federal Bureau of Investigation. The Cooperative Witness has consistently demonstrated reliability and trustworthiness in his cooperation with the Affiant. The second person who has assisted in an undercover capacity is a Special Agent of the Federal Bureau of Investigation who has posed as a broker for explosives. The work of this Special Agent has enabled the Affiant to obtain possession of dangerous materials for the purpose of controlling the potential harm which could have been caused thereby and has enabled the Affiant to collect evidence of the activities and intent of the persons under investigation. This Special Agent is trained and experienced in undercover operations and is hereafter referred to as the Undercover Special Agent.

Since on or about March 24, 1996, the Confidential Source and the Cooperative Witness each have advised investigators that during a March 24, 1996, training session of the Mountaineer Militia held at its training site in Lewis County, West Virginia, Moore, identified as holding the rank of Colonel, provided instruction to the militia members on explosives and explosives manufacturing.

Moore demonstrated extensive knowledge of explosives. He distributed to the group a handout which contained information related to demolition materials, the selection of explosives, a description of domestic explosives, and a chart which identified characteristics of U. S. demolitions explosives. Moore also described and illustrated to those present the steps necessary to manufacture an explosive device consisting of ammonium nitrate and ultra methane fuel.

The Confidential Source advised investigators that Moore, upon providing detailed information related to the manufacture of an ammonium nitrate explosive device, and having prepared an explosive mixture as a part of the training session placed the mixture in a plastic bag along with a blasting cap with cannon fuse. The plastic bag was then laid on the ground and detonated by Moore. The resultant explosion produced a very loud report and created a crater approximately 24" in diameter and

approximately 4" deep.

Moore resides at 5500 Lynn Creek Road, Lavalette, Wayne County, West Virginia; his phone number is (304) 529-7432. He is registered and licensed by the Bureau of Alcohol, Tobacco and Firearms, under Title 18, United States Code, Chapter 40, Explosives, to possess but not to manufacture explosives. Under his license, he is required to utilize such explosives acquired immediately on site.

On May 25 and 26, 1996, during a Mountaineer Militia training session at Lewis County, West Virginia, the Cooperative Witness was introduced by Looker to Phillips. Looker described Phillips as a chemical engineer with the capability of manufacturing C-4 plastic explosives. Phillips advised the Cooperative Witness that Phillips could produce a variety of explosives to include C-4 plastic explosives. Looker, Phillips and the Cooperative Witness agreed to meet during the week of May 26, 1996 to June 1, 1996, for the purpose of further discussing the matter of making explosives. Phillips was to prepare a "shopping list" of equipment and chemicals necessary for manufacturing explosives.

Looker instructed the Cooperative Witness to call Phillips and arrange a specific time and place for the meeting. Looker informed the Cooperative Witness that Phillips resides in Fairmont, Marion County, West Virginia and that his phone number is (304) 367-0432.

On May 28, 1996, the Cooperative Witness complied with Looker's instructions and called Phillips. The meeting was scheduled for May 29, 1996, at Clarksburg, West Virginia. The Cooperative Witness asked Phillips if he had made-up the "shopping list" as earlier requested by Looker to which he responded that he had.

On May 28, 1996, after making these arrangements with Phillips, the Cooperative Witness contacted Looker who lives at 210 Maple Avenue, Stonewood, West Virginia. He told Looker of his conversation with Phillips. During this conversation, Looker told the Cooperative Witness that Phillips resides at 712 Lemley Street, Fairmont, West Virginia. On May 29, 1996, Looker, Phillips, and the Cooperative Witness met in or near Clarksburg, West Virginia, at the Eat N' Park Restaurant. During this meeting, Phillips provided Looker with a white lined sheet of three-holed note paper bearing printing and captioned "list of laboratory equipment for Jack A. Phillips." Phillips told Looker and the Cooperative Witness that the note paper contained the equipment and chemicals necessary to manufacture a variety of explosives. Looker told Phillips that he wanted Phillips to manufacture a consistent quantity of explosives and that Looker had the ability to distribute the explosives.

During this discussion about manufacturing explosives, Phillips indicated that he could rid explosive material of any "markers" by using a recrystalization process during the manufacturing stages. Looker told Phillips that Looker had a contact who could "broker" explosives any/or military ordinance, and had the capability to move large volumes of explosives. This was a reference to the Undercover Special Agent.

On June 1, 1996, Looker and the Cooperative Witness drove to Flatwoods, Braxton County, West Virginia, for a prearranged meeting with Moore. Moore was described by Looker as a pyrotechnics expert.

The meeting was held at the Shoney's Restaurant. Looker asked Moore whether he could manufacture detonators for C-4 plastic explosives or nitroglycerine. Moore responded that there would be no problem making such devices, but that the blasting caps necessary to detonate the explosives would be more difficult.

Looker indicated to Moore that should an agreement be reached among the parties involved, Moore would receive some monetary benefit for his efforts in producing the detonators.

Looker relayed to Moore information pertaining to having a contact (Philips) who was capable of manufacturing homemade nitroglycerine and C-4 plastic explosives. Looker further told Moore that a distribution network had been set in place to move the finished product. This again was an apparent reference to the Undercover Special Agent.

Moore asked Looker whether he needed impact or proximity devices and indicated that the proximity devices were harder to manufacture. Moore explained to Looker and the Cooperative Witness that he had been working on an explosive device for several months which he described as a fuel air device which he represented would result in an explosion engulfing "two football fields" in area.

Looker and the Cooperative Witness asked Moore whether he could manufacture the detonators in quantity and without traceability. Moore replied that he could. Moore requested a couple of weeks to get some detonators together. At this time in the encounter, the Cooperative Witness asked Moore if providing the detonators was something Moore wanted to do. Moore responded that he did not have a problem with it.

Looker told Moore that information relating to the manufacturing of explosives and detonators should be on a "need-to-know" basis. Moore agreed and indicated he did not want to know the identity of the manufacturer of the explosives. Moore told Looker and the Cooperative Witness that he was a licensed

4

explosives expert, having received his explosives license by simple application and interview. He said that he told the interviewer that he just "wanted to remove stumps."

On July 21, 1996, Looker, and the Cooperative Witness drove to Moore's residence at 5500 Lynn Creek Road, Lavalette, West Virginia, for a prearranged meeting. Looker, Moore, and the Cooperative Witness discussed Moore's access to nitromethane, which is a component of the explosives to be manufactured. Moore indicated that nitromethane costs $60.00 per gallon in one-gallon containers, or $30.00 per gallon if purchased in a fifty-gallon drum. Moore explained in detail what nitromethane is and identified where he, Moore obtained it. Moore exited the residence and shortly returned with a one-gallon can on nitromethane, gave it to Looker and the Cooperative Witness for observation. The information on the can indicated it was manufactured by VP Racing Fuels, (210) 621-2244.

Moore displayed a copy of an explosives book to Looker and the Cooperative Witness. This book contained a page listing the speeds at which various explosives burn. Moore also engaged in general discussion with Looker and the Cooperative Witness concerning information in the book on various explosives. He also explained his manufacturing process for ammonium nitrate explosives, which he claimed were powerful if made his way.

Moore showed Looker and the Cooperative Witness several blasting caps on which he was experimenting. Additional discussion ensued concerning various components that would increase effectiveness of homemade explosives. Moore indicated he had been working on a grenade, similar to a rocket propelled grenade (RPG), fired from a shotgun capable of reaching a range of up to 100 yards with a five (5) ounce explosive load. Moore further told Looker and the Cooperative Witness that he might have a fuel-air bomb ready for demonstration soon.

Looker told Moore of a "distributor" of explosives. Looker advised Moore that Moore would receive 30 percent of the gross selling price for any explosives distributed through Looker's contact. Moore indicated he needed time to consider Looker's proposal relative to making explosives on a large scale.

On August 25, 1996, the Cooperative Witness met Moore at Moore's residence in a prearranged meeting. During this meeting, Moore expressed concern that law enforcement authorities were aware of illegal conduct on the part of Looker, Phillips, the Cooperative Witness and Moore. On August 7, 1996, the Bureau of Alcohol, Tobacco, and Firearms had conducted an unannounced inspection of Moore's residence incidental to his explosives permit. Prior to discussing the situation, Moore required the Cooperative Witness to remove his shirt to insure no hidden recording devices were being worn. Moore went on to detail the

results of the inspection, and that he had been cited for certain violations of Federal law relative to his license. During the meeting, the Cooperative Witness was shown Moore's magazine, which was the object of one of the cited violations by Bureau of Alcohol, Tobacco, and Firearms inspectors. The Cooperative Witness observed an estimated 300 to 400 blasting caps in the magazine. Moore explained to the Cooperative Witness that he had hid containers of nitromethane from the inspectors while they were otherwise engaged during the inspection. Moore told the Cooperative Witness that he had developed a working model of the shotgun propelled grenade indicating that he had tested the explosive device successfully. Moore estimated that each grenade could be produced by Moore at a cost of under $10.00. Moore estimated that components for the fuel-air bomb would cost about $100.00. Moore was still developing that explosive device. Moore indicated that he wanted to develop the explosives as earlier requested by Looker and the Cooperative Witness, but that he was having some resistance from his wife, who was present during the Bureau of Alcohol, Tobacco, and Firearms inspection. Moore indicated his personal desire was to continue efforts to develop the explosives as previously discussed, but he was concerned because of his wife's fears.

On September 5, 1996, Looker and the Cooperative Witness met Phillips at Phillips' residence, 712 Lemley Street, Fairmont, West Virginia 26554. Cooperative Witness advised that his meeting was for the purpose of allowing Phillips to review a Fisher Scientific catalog for the purpose of identifying specific laboratory equipment needed to manufacture explosives. Phillips, upon reviewing the catalog identified several pieces of laboratory equipment and chemicals necessary to manufacture the explosives. Phillips personally wrote the identity of each piece of equipment, catalog number, and price of each piece on a index card which he gave to Looker and the Cooperative Witness. Looker instructed Cooperative Witness to obtain the requested laboratory equipment and to provide it to Phillips.

On September 27, 1996, the Cooperative Witness met with Phillips at 712 Lemley Street, Fairmont, West Virginia, and delivered laboratory equipment to Phillips consisting of an 8" stainless steel receiver, an 8" stainless steel cover and one Kimax cylinder (100ml). The Cooperative Witness advised Phillips that additional laboratory equipment would be delivered at a future date when received by the Cooperative Witness from Fisher Scientific as ordered. While in Phillips' residence, the Cooperative Witness observed a plastic bag with approximately 10 pounds of ammonium nitrate, and another plastic bag with 1 to 2 pounds of a substance identified as potassium nitrate.

On October 2, 1996, the Cooperative Witness met with Phillips at Phillips' residence and delivered additional laboratory equipment consisting of one Kimax glass buret (50ml),

and one 115v Fisher Scientific thermix stirrer, serial number 60801853. The Cooperative Witness told Phillips that the remaining laboratory equipment would be delivered when the Cooperative Witness received it. The Cooperative Witness advised the Affiant that a plastic bag containing ammonium nitrate, estimated at 8 to 10 pounds, was observed on the kitchen table at Phillips' residence.

During this meeting, Phillips displayed a plastic container to the Cooperative Witness indicating that the container was filled with an ammonium nitrate and gasoline mixture suitable for use as an explosive. The Cooperative Witness estimated that the container measured approximately 4" x 4" x 3" and would be described as a square-shaped clear plastic container.

The above information is true and correct to the best of my knowledge, information and belief.

_____
J. C. Raffety
Special Agent, FBI

Sworn and subscribed to before me this 9th day of October, 1996.

_____
United States Magistrate Judge

7